CLARK BLADE & RAZOR CO. v. GILLETTE SAFETY RAZOR CO.†

(Circuit Court of Appeals, Third Circuit.  February 1, 1912.)

No. 1,520.

**1. PATENTS (§ 328\*)—VALIDITY AND INFRINGEMENT—SAFETY RAZOR.**
 The Gillette patent, No. 775,134, for a razor having a detachable blade of such thinness and flexibility as to require external support to its cutting edge, was not anticipated, and covers a device both original and generic; also, *held* infringed.

**2. PATENTS (§ 107\*)—VALIDITY—PROCEEDINGS IN PATENT OFFICE.**
 The withdrawal of an application for a patent and the substitution of another is proper procedure where the inventions claimed are identical, and the second is merely an amplification of the first.

 [Ed. Note.—For other cases, see Patents, Cent. Dig. § 150; Dec. Dig. § 107.\*]

**3. PATENTS (§ 101)—VALIDITY—SUFFICIENCY OF CLAIMS.**
 A claim of a patent is not invalid because the thing claimed is not in itself an operative device, but only an element of one.

 [Ed. Note.—For other cases, see Patents, Cent. Dig. § 141; Dec. Dig. § 101.\*]

Appeal from the Circuit Court of the United States for the District of New Jersey.

Suit in equity by the Gillette Safety Razor Company against the Clark Blade & Razor Company.  Decree for complainant (187 Fed. 149), and defendant appeals.  Affirmed.

McCarter & English, for appellant.

M. B. Philipp and James Q. Rice (Thomas W. Pelham and Clifford E. Dunn, of counsel), for appellee.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

BUFFINGTON, Circuit Judge.  [1] In the court below the Gillette Safety Razor Company, owner of patent No. 775,134, granted November 15, 1904, to King C. Gillette, for a razor, filed a bill against the Clark Blade & Razor Company, charging infringement of certain claims thereof.  In an opinion reported at 187 Fed. 149, that court held the patent valid and the claims in question infringed.  From a decree to that effect the respondent appealed to this court.  The opinion of the lower court is so thorough and exhaustive that an extended discussion of the questions involved could be but a restatement.

Making, then, the opinion of that court by reference the basis of our own, we content ourselves with briefly stating the conclusions to which a study of the record leads.  In doing so, we take, for illustration, as did the court below, claim 2, as embodying the crux of the case.  These conclusions are:  First, the invention of Gillette is substantially set forth in claim 2, viz., "as a new article of manufacture, a detachable razor-blade of such thinness and flexibility as to require external support to its cutting edge";  second, the proofs carry Gillette's invention to 1895;  third, Gillette's device was generic, original, and not anticipated in the razor art;  fourth, the proceedings in the

Patent Office whereby Gillette substituted a second application for his first were lawful and the subject-matter of the two was substantially the same; and, fifth, claim 2 is valid and infringed.

In support of the second proposition nothing need be said save to refer to the lower court's opinion. The facts cited therein justify such conclusion.

As to the third proposition, we may say that a careful study of the razor-making art satisfies us that a ribbon or wafer razor-blade, so thin as to require external support of its cutting edge, was original with Gillette, and a like study of the art of making razor steel, its chemical qualities, its tempering and the blade contour obtained to aid honing, satisfy us that the Gillette blade was a radical departure from the whole teaching, practice, and trend of the prior art. As to such prior art not anticipating Gillette's device, we can add nothing to the thorough examination and discussion in the opinion below.

[2] A study of the file-wrapper and the proceedings in the two applications shows that Gillette, while he abandoned his first application and substituted therefor a second, did not abandon his invention. This substitution was proper procedure. Godfrey v. Eames, 1 Wall. 324, 17 L. Ed. 684; Corrington v. Westinghouse (C. C.) 173 Fed. 76. We also find the substance of the second application had been embodied in the first. In that respect we have the action of the Patent Office, which, with full knowledge of the previous application, allowed such substitution and based its grant of the patent on the basis of the substantial identity of the two applications. The presumption that arises in such case must, as in a reissue, be overcome "only," as said in Smith v. Goodyear, 93 U. S. 499, 23 L. Ed. 952, "by showing from a comparison of the original specification with that of the reissue that the former does not substantially describe what is described and claimed in the latter." A critical examination of the file-wrapper satisfies us that the first application contained a full disclosure by Gillette of his invention, and the additional matter in the second was a mere amplification of the disclosures of the first. It is contended that the word "thinness," as a characteristic of Gillette's blade, was a new feature added in the second application. In the mere use of that particular word this is true, but the implied thinness of Gillette's blade runs through the first application so plainly that no one can read it without having that characteristic of his blade inferentially brought to his attention. And substantial disclosure, such as enables one skilled in the art to practice, fulfills the requirements of the patent law. The mere form the disclosure takes, whether in express words or by necessary implication, is a matter of words, but the substantial feature, the statutory requisite, is that the patentee shall really disclose to those versed in the art the information that enables such a one to practice it. It is clear that no skilled razor maker would, or indeed could, have made the blade of Gillette's original application without producing the thinness indicated in the substituted one. Thus the original application speaks of the adjustable character of the blade which is stamped from sheet steel of uniform thickness, which "adjustment is carried out by reason of the natural spring of the cast sheet steel blade by mechanism for springing it to give different spaces between

the edge of the blade and the guard." It will thus be clear that, where there is spring and flexibility in small sheet steel stampings, thinness is an accompaniment of such flexibility.

[3] As to our fifth conclusion, we note it should be added that claim 2 is not invalid because not for an operative device, for, if such were the law, patentability must have been denied to Elias Howe for "the grooved and eye-pointed needle" which constituted his seventh claim (Howe v. Williams, 2 Fish. Pat. Cas. 395, Fed. Cas. No. 6,778), and of which it was said in Deering v. Winona, 155 U. S. 286, 15 Sup. Ct. 118, 39 L. Ed. 153:

"The invention of a needle with the eye near the point is the basis of all the sewing machines used, but the methods of operating such a needle are many; and, if Howe had been obliged to make his own method a part of every claim in which the needle was an element, his patent would have been practically worthless."

On the question of infringement, we agree with the conclusion of the court below, which we restate, viz.:

"The flat backing of the holder as used by the defendant is manifestly a mechanical equivalent for the curved backing adopted by the complainant in its commercial form of razor. The curved form would seem, as the patentee has suggested, to be the better form, but the defendant cannot escape infringement by simply substituting a flat backing which obviously performs the same function as the curved backing, and in substantially the same way. There are other differences between the devices of the complainant and the defendant, but they are so slight and unimportant as scarcely to require consideration. For instance, the complainant's blade has two positioning holes which engage positioning studs formed near the ends of the back of the razor, and a central hole for engaging the threaded stud which secures the clamping holder in place; while defendant's holder has two projections on the guard, and the blade is provided with a long slot through which the clamping screw passes, while the ends of the slot fit over the guard projections. This slot of the defendant's blade when it is applied to the complainant's commercial form of holder exactly fits it. Indeed, the defendant advertises its blade as adapted to be used in the complainant's holder. There is, as already intimated, no real difference between the two devices, and any apparent differences are purely mechanical and evasive, and possibly designed to circumvent the claims of the patent in suit."

The decree of the court below will therefore be affirmed.