## GILLETTE SAFETY RAZOR CO. v. CLIFF WEIL CIGAR CO., Inc.

### No. 4526.

Circuit Court of Appeals, Fourth Circuit.

Nov. 6, 1939.

Henry R. Ashton, of New York City (Edmund M. Preston and Hunton, Williams, Anderson, Gay & Moore, all of Richmond, Va., and Fish, Richardson & Neave, of New York City, on the brief), for appellant.

David S. Kane, of New York City (McGuire, Riely, Eggleston & Bocock, of Richmond, Va., Duell & Kane and Philip T. Dalsimer, all of New York City, and Murray M. McGuire, of Richmond, Va., on the brief), for appellee.

Before PARKER, SOPER, and NORTHCOTT, Circuit Judges.

SOPER, Circuit Judge.

This suit was brought by the Gillette Safety Razor Company to secure an adjudication that a one piece safety razor manufactured and sold by the Segal Safety Razor Corporation infringes claim 1 of United States Patent No. 1,543,587 issued to J. F. O'Malley on June 23, 1925, on an application filed on March 28, 1924. The defendant in the case is the Cliff Weil Cigar Company, Incorporated, a distributor of the Segal razor, and the Segal Company is defending the suit.

A razor of the Gillette type is provided with a two edged flexible blade, so thin as to require the external support of two members between which it is clamped adjacent to its cutting edges; that is, a curved head member with straight edges that engage the blade adjacent to its edges, and a guard member provided with protecting teeth. In addition there is a handle provided with an internally threaded end which can be screwed upon a threaded spindle in the head that projects through openings in the blade and the guard. Thereby the blade is flexed and clamped between the head and the guard. Such a razor, consisting of blade and a holder of three separate parts, has been on the market for many years, and the Gillette patent covering it has been sustained in litigation. Clark Blade & Razor Co. v. Gillette Safety Razor Co., 3 Cir., 194 F. 421.

In 1930, after the Gillette patent had expired, the Segal Company put on the market a razor of the Gillette type in which the three holding members above described were joined in a permanently assembled unitary structure, which did not have to be taken apart in order to insert or remove the blade. This improvement met with considerable success, since it tended to obviate the inconvenience and injury in the use of the earlier device caused by dropping the sepa-

rate parts of the razor upon the floor. The Segal Company obtained certain patents relating to this project. In October, 1934, the Gillette Company also put upon the market a razor in which the three holding members were permanently joined. The Segal Company brought suit for patent infringement in New York against a subsidiary of the Gillette Company which was engaged in distributing its new razor. Thereafter, on January 17, 1936, the Gillette Company acquired the O'Malley patent, and on January 24, 1936, notified the Segal Company that its razor infringed the patent. The instant suit in the Eastern District of Virginia was filed by the Gillette Company on February 4, 1938. The suit in New York has not yet been reached for trial.

The O'Malley patent was issued on June 23, 1925. It has been described as a paper patent since the precise structure it discloses has never been manufactured and put upon the market; and the patent has found no practical application at all unless it be true, as the Gillette Company asserts in this suit, that the Segal Company has embodied the patent in its razor since 1930, and the Gillette Company itself has likewise made use of the patent since October, 1934, more than a year before it acquired the right to do so.

O'Malley describes a razor of the Gillette type, having a head member and a guard member, between which the flexible blade is adjustably clamped; but unlike the earlier Gillette type the three pieces of the holder are permanently joined together. The guard is rigidly attached to a threaded shank of the handle. The head is movably attached to the handle through depending side arms which are pivoted to a yoke supported in a groove in a nut that is free to turn and to move up and down on the threaded shank of the handle. When the nut is screwed upwardly, the head is thereby moved upwardly in a line parallel to the axis of the handle. As the head is raised, its depending side arms move or slide through notches in the ends of the guard, and since the notches are wider than the side arms, the result is a lateral motion of the head to either side by gravity for a sufficient distance to permit the insertion and removal of the blade. When the nut is screwed downwardly, the side arms move downwardly through the slots and the head is brought into clamping engagement with the guard.

The specification of the patent states that its outstanding object resides in the construction of the blade holding means whereby the several parts are permanently connected together so as to facilitate the application and removal of the blade without dropping or loss of the members. This object is accomplished by the two mechanical movements of the head, the first movement being in a line parallel to the axis of the handle to separate the head from the guard, and the second movement being a sidewise or lateral movement to get the head out of the way and permit the insertion or removal of the blade. These movements of the head are said to be due to its pivotal and slidable connection with the handle. Claim 1 of the patent is as follows:

"1. A safety razor including a flexible double edged blade and holding and clamping means therefor comprising a handle, a guard member rigidly attached thereto and a head having pivotal and slidable connection with the handle to permit of lateral movement in addition to movement in a line parallel to the axis of the handle whereby to effect clamping and unclamping of the blade to associate and disassociate the same with the holding and clamping means."

The idea of a one piece razor of the Gillette type did not originate with O'Malley. In this respect he was anticipated by the Edmonds patent No. 944,989 of 1909, and the Dunn patent No. 1,064,457 of 1913. Both of these patents were issued to the Gillette Company as assignee. Edmonds pointed out the inconvenience of the ordinary Gillette razor in that the holder has to be taken entirely apart to insert or remove the blade. His structure is so arranged that the head of the razor is rigidly attached to the handle, while the guard is mounted on a swinging member which is pivoted to the handle so that it can swing out laterally away from the handle to permit the removal or insertion of the blade. The guard is released from clamping engagement with the head by turning a manipulating sleeve or nut which may be located at the top or the base of the handle. By turning the nut in either direction the clamp is forced toward the head or withdrawn from it, as the case may be. To adjust the blade in position, the nut must be turned in the proper direction to withdraw the guard a short distance from the head, and then the swinging member is moved out from the handle as far as may be necessary. The blade is then placed in position, the guard is swung back, and the nut is then turned to drive the clamp against the head with sufficient pressure

to hold the blade in place. The arrangement is not so convenient as in O'Malley, since it would seem the razor would have to be held head down when the guard is withdrawn, or otherwise the blade would fall out; also the swinging member must be pushed aside laterally by hand.

It is noteworthy that the O'Malley structure differs from the Edmonds' structure in that in the former the guard is rigidly attached to the handle and the head moves toward and away from the guard, while in the latter the head remains stationary and the movement takes place in the guard. In both structures, however, there are two movements of the moving member; first, a movement parallel to the axis of the handle, and second, a lateral or sidewise movement with respect thereto.

The Dunn patent also calls for a razor of the Gillette type with a one piece construction of the means for holding and clamping the blade in place. The guard member is rigidly attached to the handle. The head, as in O'Malley, is provided at opposite ends with downwardly extending arms. In the arms are formed longitudinal slots which are traversed by bolts or screws connected with the ends of the guard. The slotted arms provide a yielding and pivotal connection between the guard and the head so that these members may be separated sufficiently to permit the insertion and removal of the blade. Thus, the guard remains stationary with respect to the handle, while the head moves to and from the guard in a line parallel with the axis of the handle. When the head is moved away from the guard, the head is also capable of a lateral or sidewise movement with reference to the handle, since the head can be swung to either side by reason of the pivotal connection of the depending side arms with the guard.

The movement of the head to and from the guard is not controlled mechanically by a nut in the handle, as in O'Malley, but a cam construction is provided for adjustably forcing the clamping members together and locking them in position. Hence there is no operative connection between the head and the handle, and the head must be lifted above the guard by hand. There is also a difference in the pivotal connection between the two patents, since in Dunn the connection is with the outer edges of the guard, while in O'Malley the connection is with a yoke supported by a nut attached to the handle below the guard. Like O'Malley, however, the guard is rigidly attached to the handle, while the head has a pivotal and slidable connection with the handle to permit of lateral movement in addition to movement in a line parallel to the axis of the handle.

Neither of these earlier patents were cited by the Patent Office when the O'Malley application was pending, and since they unquestionably constitute a most important part of the prior art, the presumption of validity arising from the grant of the patent is greatly weakened. Maibohm v. R. C. A., Victor Co., 4 Cir., 89 F.2d 317. The plaintiff takes the position that the operative mechanism, that is, the nut on the handle by which the two clamping members are separated or brought together, is the essence of the patent; and the absence of such a mechanism in the Dunn patent and its presence in the O'Malley device is emphasized as indicating that O'Malley's conception involved the genius of an inventor. But even the idea of releasing the clamping engagement between head and guard by mechanical means did not originate with O'Malley. The Edmonds patent disclosed a manipulating sleeve or nut located either at the top or the base of the handle, to be used when it was desired to adjust the relative position of the head and the guard. To be sure the guard and not the head was moved by turning the nut, but the desirability and usefulness in this connection of a familiar mechanical means was clearly indicated.

The plaintiff's contention as to the validity of the O'Malley patent is not supported by commercial application and success for the device disclosed has never been manufactured. The plaintiff says that the Segal and Gillette unitary razors were manufactured in accordance with the teaching of the patent, and that their widespread use demonstrates the inventive character of its disclosures. But as appears below, the commercial success of these razors has been due in large measure to features not found in the patent; and in any event, commercial success does not alter the rule that in considering a question of infringement, the scope of a patent must be determined by reference to the disclosures of the prior art. Victor Cooler Door Co. v. Jamison Cold Storage Door Co., 4 Cir., 44 F.2d 288. Applying this rule, it is our opinion that the Segal razor does not infringe the patent in suit, and hence it is not necessary to pass upon its validity.

The Segal is also a one piece razor. The guard is rigidly attached to the handle, and the head is centrally pivoted to a rod which passes through the guard and into the handle. The movements of the rod and head are controlled by a nut at the end of the handle. The arrangement of the mechanism within the handle is such that when the nut is turned, the head is first raised above the guard in a line parallel to the axis of the handle; and then when the nut is turned further, the interior rod turns and the head tilts about its central pivot to one side until it occupies a position parallel to the central rod within the handle. In this position the blade, which has a large central opening, may be inserted or removed.

The plaintiff contends that claim 1 of the patent is infringed, because in both Segal and O'Malley, the guard member is rigidly attached to the handle, and the head has a pivotal and slidable connection with the handle, giving to the head both a lateral movement and a movement in a line parallel to the axis of the handle and because in both structures the movement of the head is controlled by operative mechanical means. Hence it is said that the language of the claim covers the Segal device.

Differences have arisen between the experts as to the precise meaning of the descriptive phrase found in claim 1 of the patent, that is, "pivotal and slidable connection" between the head and the handle permitting the two movements of the former. For our purposes, the dispute seems unimportant, for it is evident that the patentee had reference to the sort of structure depicted in the specification and drawings, by which the two movements of the head were to be accomplished. When the language of the claim is read in the light of the specification, it is obvious that the Segal device does not have the slidable and pivotal connection of the patent, or the movements of the head there disclosed. It is true that in both devices the first turns of the manipulating screw cause the head to be raised above the guard, but thereafter the movement and the mechanical structures which cause the movement are quite different. In O'Malley, the head is rigidly attached to the side arms so that when they swing on the pivot, the head is moved to one side or the other of the guard, and when it finally comes to rest, the side arms meet the handle at an oblique angle. But in the Segal device, the head does not move to one side or the other of the guard after the first turns of the screw are finished, but turns upon a central pivot and finally occupies a position parallel to the handle and at right angles to the guard.

These differences are sufficient, in our opinion, to avoid the charge of infringement when the patent is given the strict construction required by the prior art. It must be borne in mind that the basic idea of a unitary razor was disclosed by the Edmonds patent in 1909, with the suggestion that the movement of the parts may be controlled by mechanical means; and that in Edmonds and Dunn, it was shown that the object may be obtained either by a fixed guard and a movable head, or by a fixed head and a movable guard, provided that there is first a movement to separate the clamping parts, and second a lateral movement to give access to the blade. Manifestly the O'Malley patent must be strictly confined to the peculiar features which distinguish it from these earlier disclosures, and when this is done, the patent does not cover the Segal structure.

The Segal razor is much more effective in actual use than the O'Malley razor would have been had it ever been made, because the object is obtained by a relatively circumscribed movement of the head controlled by mechanical means. This statement is equally true of the Gillette unitary razor. In the latter device also, the guard is rigidly attached to the handle. The head is divided centrally into two parts that are pivoted to a structure attached to the end of the guard and open upwardly and outwardly like a pair of swinging doors after the head has been lifted from the guard by manipulating the screw in the handle. While the two razors have features that are found in the Edmonds, Dunn and O'Malley patents, their commercial success is doubtless due to the more convenient features in which they differ from the structures described in these earlier patents.

The decree of the District Court, by which the bill of complaint was dismissed, is affirmed.