## Case No. 3,810.

### DENTAL VULCANITE CO. v. WETHERBEE.

[2 Cliff. 555;[1] 3 Fish. Pat. Cas. 87.]

Circuit Court, D. Massachusetts. May Term, 1866.

SUIT BY CORPORATION — PLEA OF NO CORPORATE EXISTENCE—PATENTS — ASSIGNMENT — SURRENDER AND REISSUE—INVENTION AS BETWEEN EMPLOYER AND EMPLOYEE—ABANDONMENT.

1. Certain persons in Massachusetts associated themselves together, prior to the filing of the bill in this case, by articles of agreement in writing, and formed a corporation by the name used in the bill of complaint, to manufacture and sell certain articles under letters-patent which were by the inventor assigned to the company. It was contended that the associates were not a corporation under Gen. St. Mass. c. 61, p. 341. The defence was not set up in the answer to the bill, but defendant gave notice of his intention to plead the same in bar of the suit. Held, that such defence must be pleaded in abatement, not in bar, and could not be put in under the general issue.

2. Corporations may have the same remedies at law or in equity as natural persons: and the general issue pleaded to a suit brought by the corporation is an admission of its corporate existence.

3. The entire interest in a patent was assigned by the inventor, and subsequent to such assignment an application for reissue was signed by and the reissue granted to him. Held, that in the absence of fraud or concealment it could not be said that the reissue was void, the assignment being duly recorded in the patent office, and the surrender having been made with the knowledge and consent of the assignee.

[Cited in Goodyear Dental Vulcanite Co. v. Willis, Case No. 5,603.]

4. Under such circumstances a mere wrongdoer cannot defend himself against the charge of infringement by proving that the proceedings which led to the reissue were irregular, unless it be shown that the proceedings were contrary to law, or that the patent was granted to the wrong party.

5. The act of congress does not in terms require that a surrender shall be in writing.

6. Where it appeared that a person was employed by an alleged inventor to make experiments upon the invention, and that such employee before that time had tried a single imperfect experiment; that previous to such person being employed, the alleged inventor had filed a caveat upon the invention; that a contract

was entered into between the two, in which the patentee was treated as inventor and the other party as an employee, and the employee had never in his lifetime made any claim as the inventor: Held, that although the experiments were conducted to a successful issue, the person employed could be considered neither a sole nor joint inventor of the improvement.

7. An application for a patent was first made in 1855, and rejected, on appeal to the commissioner, in 1856. No further appeal or new application was made till March 25, 1864, when a second application was made, which was successful. Between 1856 and 1864 the invention had gone into public use with the inventor's knowledge and consent, as shown in the testimony, and the inventor had made certain assignments and sales of interests in the invention. Held, that these facts did not show actual abandonment.

[Cited in Bevin v. East Hampton Bell Co., Case No. 1,379; Weston v. White. Id. 17,-459; Colgate v. W. U. Tel. Co., Id. 2,995. Explained in Johnsen v. Fassman, Id. 7,365; Goodyear Dental Vulcanite Co. v. Smith, Id. 5,598. Followed in Goodyear Dental Vulcanite Co. v. Root, Id. 5,597.]

8. Delays in the patent office, which the inventor cannot prevent, should not under any circumstances affect the validity of his patent when granted.

[9. Followed in Goodyear Dental Vulcanite Co. v. Gardner, Case No. 5,591, as to points not specified.]

Bill in equity [by the Dental Vulcanite Company against Isaac J. Wetherbee] founded upon letters-patent [No. 43,009] for a new and useful improvement in artificial gums and palates. Pending the suit and subsequently to the filing of the answer the patent was twice reissued. Subsequent to the last reissue the complainants filed a supplemental bill of complaint, to which answer was duly made, and the cause was fully heard upon pleadings and proofs. The original patent was granted to John A. Cummings, June 7, 1864, and in the June following it was assigned to the complainants. In October following the first bill was filed, and in December the respondent answered. The first reissue was granted to the inventor, and not to the assignees as it should have been, but on return to the patent office the error was corrected. The second reissue was to correct a date erroneously given in the first, and was granted to the complainants at the request of the inventor and original patentee. The petition for the second surrender and reissue was also signed by the original patentee, and in terms purported to surrender the original patent instead of the first reissue. The date of the first reissue was January 10, 1865; that of the second, March 21, same year. [No. 1,904.] It appeared that John A. Cummings first made an application for a patent for his invention in 1855, and that the same was, after three examinations, finally rejected, upon appeal by the commissioner of patents, in 1856. The application was not further appealed, and was not renewed till March 25, 1864, when a new application was filed, upon which the patent issued. In the interval between the filing of the original appli-

---

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

cation and that of 1864, the invention had gone into use to a considerable extent, with the knowledge and consent of the then applicant proved thereto; and it also appeared that during the same interval the inventor had made certain assignments of interests in the .invention. Certain letters of the patentee and other evidence were introduced, tending to show that the inventor had not relinquished his design of obtaining a patent at any time between the date of the original application and the final allowance of the patents. It was urged by the defence that the Dental Vulcanite Company was not a corporation under the laws of Massachusetts, as claimed in the bill; that being an association of persons, they had not conformed to the state statute regulating such associations, either in their proceedings for organization or in their subsequent acts and doings; that the alleged inventor was not the original and first inventor of the improvement; that he had after application abandoned his invention, because the same had gone into public use before the patent was finally obtained. It was also objected that the plaintiff company did not carry on the manufacturing business within the meaning of chapter sixty-one of the General Statutes of Massachusetts. A person by the name of Bevin was employed by the inventor to experiment upon the invention, and through him it was conducted to a successful issue. Previous to his employment, Bevin had made an imperfect experiment, and a caveat had been filed by the alleged inventor in his own name. It was urged in defence that Bevin was the real inventor.

B. R. Curtis, Causten Browne, and J. E. Maynadier, for complainants.

Whatever force there may be in the alleged misfeasance or nonfeasance of the complainant corporation, and whatever its effect in other proceedings, it cannot avail in this suit where the complainant is a legal corporation, holding the legal title to this patent, and in a suit against a third party a mere wrongdoer. As to validity of the first reissue, see Gayler v. Wilder, 10 How. [51 U. S.] 477; Woodworth v. Stone [Case No. 18,021]. The second reissue was to correct a date erroneously given in the first one, and was granted directly to the Dental Vulcanite Company as Cummings's assignee; but the petition making the surrender and asking for the second reissue was irregular in two particulars: it in terms surrendered the original patent instead of the first reissue; and it was signed by Cummings, who had assigned his whole interest, instead of by the company his assignees. The surrender in terms of the original patent instead of the first reissue was a clerical error which the commissioner rightly corrected of his own motion. The first reissue was that which was surrendered in fact, and was the only grant in existence to be surrendered. Or the error

in question may be regarded as simply a misdescription of the thing surrendered, the identity of the thing itself being incapable of being mistaken. There is no requirement of law that a patent should be surrendered by writing. This is provided for by rule for convenience and for certainty. But a mere manual delivery of the old patent by the person entitled to surrender it, or by his agent, with intention to surrender, and an acceptance and cancellation by the commissioner and the issuing of new letters-patent for the same invention on an amended specification, would clearly be a substantial execution of the law providing for reissues. Upon the question of abandonment, Godfrey v. Eames, 1 Wall. [68 U. S.] 317, and Adams v. Jones [Case No. 57], were cited.

A. F. Badger, G. S. Boutwell, and Joel Giles, for respondent.

The Dental Vulcanite Company is not a legally organized corporation. Gen. St. c. 61, §§ 1, 6; St. 1851, c. 133, §§ 1, 6; St. 1852, c. 9, §§ 1, 2; Gen. St. c. 61, § 5; and Gen. St. c. 60, § 14. The original patent, dated June 7, 1864, was not lawfully issued and delivered to Cummings. Cummings made an application for a patent for substantially the same thing, April 12, 1855, which was rejected finally, February 6, 1856, in which decision Cummings acquiesced without appeal, and made no new application till March 25, 1864. If the rejection was an error, the neglect of Cummings to appeal to a judge of the circuit court for the district of Columbia for a period of more than eight years was a bar to further proceedings either by appeal or by renewal of his application. St. 1836, c. 357, § 7 [5 Stat. 119]; St. 1839, c. 88, § 11 [Id. 354]; St. 1852, c. 107, § 1 [10 Stat. 75]; Law, Dig. p. 148, § 55; and Judge Merrick's opinion (MS.) Ex parte Raymond [Case No. 11,592a]. An application for a patent in the sense of the patent law is an entirety, embracing all that should be done by the applicant until his application terminates in a final rejection or in the grant of a patent; and neglect to prosecute his application for more than two years is an abandonment of his invention to the public. St. 1861, § 12 [12 Stat. 248]; Godfrey v. Eames, 1 Wall. [68 U. S.] 317; rules of patent office in force in 1855, §§ 37–39, 105. The applicant may make as many applications as he pleases at any time not more than two years subsequent to the time of the public use of the invention. Cummings acquiesced in the final decision of the commissioner. February 6, 1856, and the subsequent and general use of the article claimed by Cummings having been by his consent and allowance, he must be held in law to have abandoned his invention, even if his claim to be the original and first inventor were not disputed. R. 11, § 10; Kendall v. Winsor, 21 How. [62 U. S.] 329, and Law, Dig. p. 95, § 31; Pennock v.

Dialogue, 2 Pet. [27 U. S.] 1; Shaw v. Cooper, 7 Pet. [32 U. S.] 292. Sales of the invention justify the inference of abandonment. The application of March 25, 1864, was a new application, and was so treated by the applicant, and by the patent office, while in fact the art of forming the plate, in which artificial teeth are inserted, of hard rubber, had been generally practised for more than two years. St. March 2, 1861, c. 88, § 10. The reissues of the patent to Cummings, dated January 10, 1865, and March 21, 1865, were not made according to law. Because the original patent of June 7, 1864, was surrendered by Cummings who did not own it; and the reissue of January 10, 1865, was granted to Cummings, and not to the Dental Vulcanite Company, and has never been surrendered; and the reissue of March 21, 1865, was granted upon the surrender by Cummings, of said original patent of June 7, 1864, which he did not own, and which did not then exist. A void act cannot be made good by a subsequent approval; the material act in a reissue is the surrender of the existing patent by the owner. If that be void the proceedings of the government in the grant of a reissue are null.

CLIFFORD, Circuit Justice. Certain preliminary objections have been made by the respondent to the right of the complainants to maintain the suit, which will first be considered. Respondent contends that the complainants are not a corporation as alleged in the bill of complaint. They claim to be a corporation legally organized under the law of the state. Gen. St. c. 61, p. 341. Section one of that chapter provides, among other things, that "three or more persons, who shall have associated themselves together by articles of agreement in writing for the purpose of . . . . carrying on any mechanical, mining, quarrying, or manufacturing business . . . . and shall have complied with the provisions of this chapter, shall be and remain a corporation under any name indicating their corporate character assumed in their articles of agreement which is not previously in use by any other corporation or company." Under that provision, the persons claiming to constitute the corporation complainants associated themselves together, prior to the filing of the original bill of complaint, by articles of agreement in writing, and formed the corporation by the name assumed in the bill of complaint, to manufacture and sell "artificial gums and palates of vulcanite or hard rubber, under letters-patent granted John A. Cummings, dated June 7, 1864, and assigned to said corporation." No such defence was set up in the original answer of the respondent, but he gave notice on the 2d of January, 1865, that he should insist in bar of the suit that the complainants were not a corporation legally organized under the laws of the state, and he repeated that allegation in his supplemental answer. Some of the objections taken to the proceedings were overruled at the hearing, and therefore will not be made the subject of remark. The principal objections which remain open are: (1) That the business of the company, as declared in the articles of association, is not a manufacturing business within the true intent and meaning of the provision to which reference has been made; and (2) that the company does not in point of fact manufacture the alleged improvement, nor carry on any manufacturing business. Strong doubts are entertained whether there is any merit in the objections, even if it be admitted that such a defence if valid may be pleaded in bar as well as in abatement. Doubtless the nature of the improvement is such that it is necessarily made to order; but it is difficult to see how that circumstance can divest the patented article of the character of a manufacture. Manufacturers often work to order, and it is not perceived that it can make any difference in respect to the question under consideration whether the article was made for sale, or was made to order, as in either case it is manufactured before it is actually sold. Licenses are granted by the complainants, as appears by the allegations in the bill of complaint; but there is also evidence in the case which shows that they have agents who manufacture the patented article. They complied in form with the requirements of the statute, and inasmuch as the authorities of the state have not called the validity of their organization in question, it cannot be admitted that a mere wrongdoer can set up such a defect, if it be one, as a justification of his wrongful acts. But it is not necessary to place the decision of the court upon either of those grounds, as it is clearly settled by the supreme court that such a defence must be pleaded in abatement, and that it cannot be pleaded in bar, nor be given in evidence under the general issue. Corporations may have the same remedies at law or in equity as natural persons, and the rule established by the supreme court is, that if the defendant plead the general issue in a suit brought by a corporation, it is an admission of the corporate existence of the plaintiffs, and dispenses with the necessity of any proof on their part to sustain that allegation. By pleading to the merits, said Judge Story, in the case of Conard v. Atlantic Ins. Co., 1 Pet. [26 U. S.] 450, the defendant necessarily admitted the capacity of the plaintiffs to sue. If he intended to take that exception, it should have been done by a plea in abatement, and his omission to do so was a waiver of the objection. Kane v. Paul, 14 Pet. [39 U. S.] 41; Childress v. Emory, 8 Wheat. [21 U. S.] 642. Reference was made in the argument to the fact that the respondent, on the 2d of January, 1865, in the paper filed at that time, giving notice of additional matters of defence not specified in the original answers, states that he will insist in bar of the suit that the plaintiffs are not a corporation legally organized under the laws of the state; but the

paper having been filed without leave to amend cannot be regarded as an amendment to the original answer. Looking at the objection in any point of view, we are of the opinion that it cannot be sustained.

Objection is also made by the respondent to the proceedings of the patent office on granting both the first and the second reissued patents, and he insists that the errors were of such a character that the last reissued patent is void. Recurring to the dates, it will be seen that the assignment to the complainants was prior to the surrender of the original patent; and the record shows that the instrument of assignment was on file in the patent office when the application for the reissue was presented. Fraud is not imputed, and there is no pretence of intentional error or concealment. The errors suggested are: 1. That the application for the first reissue was signed by the original patentee; and, 2. That the patent office in the first instance actually granted the reissue to the applicant. Whether the mistake was first discovered by the patent office or by the party named as patentee does not appear, but it does appear that the letters-patent were immediately returned to the commissioner, and that the mistake was corrected as a clerical error. Unless it could be corrected as a clerical error, it could not be corrected at all, as it was clearly not a case falling within the provision authorizing a surrender and reissue. Rules of the patent office furnish a form of an application for the surrender of a patent; but the act of congress does not in terms require that it shall be in writing. Patents may doubtless be surrendered on petition or by delivery as the rules of the patent office may prescribe, and in the cases specified in the act of congress a new patent may be issued to the original inventor, or, in case of an assignment, to his assignees. Where the assignment covers the whole interest of the inventor, present and prospective, it is undoubtedly more regular that the application for the surrender should be made by the assignee; but, even in that case, it cannot be admitted that the reissue is void, if the assignment was duly recorded in the patent office, and the application for the surrender and reissue was made with the knowledge and consent of the assignee. Letters-patent must in all cases conform to the requirements in the act of congress; but where the reissued patent is correct in form, and there is no proof of fraud, intentional error, or concealment, a mere wrongdoer cannot defend himself against the charge of infringement by proving that the proceedings which led to the reissue were irregular, unless it be shown that the proceedings were contrary to law, or that the patent was granted to the wrong party. Correction of the error in this case was made by the commissioner at the request of the assignor of the patent; and he stated in the same communication that the assignment to the complainants was on record in the patent office.

The second surrender was asked merely to correct an error of date in the first reissue; and it is obvious that the suggestion of error was well founded, and that the correction requested was one proper to be made. Two errors also are suggested in the proceedings which led to the second reissue: (1) That the application for the surrender of the patent was signed by the original inventor; and, (2) that the patent described in the application for the surrender was the original patent, instead of the first reissue, as it should have been. Evidently the first objection is without merit, as the application to surrender the patent referred to the assignment, and contained the request that the new patent might be issued to the complainants. Pursuant to that request, the reissue was granted; and the complainants, having adopted the surrender and accepted the new patent, are estopped to deny either the authority of the applicant or that of the commissioner. See "Surrender," 1 Com. Dig. 1; 10 Coke, 67b; Shep. Touch. 301–303. Complaint certainly cannot be made by the applicant, because it was his own act; and it is equally clear that the government cannot be heard to complain, because there is but one patent in existence for the invention, and the commissioner had full knowledge of all the circumstances.

The remaining preliminary objection is, that the description of the patent in the application for the surrender was erroneous. Suppose that is so, still it is apparent that all the papers were before the commissioner, and that he had full knowledge of all the circumstances and of what the patentees desired to accomplish. The averment of the answer is merely that the reissues were not made according to law; but it is not alleged or proved that there is any error in the records of the patent office, except what appears in the application for the surrender. The statement in the patent is, that the first reissue was surrendered and cancelled; and, in the absence of any proof to the contrary, the presumption of law is, that the statement as there made is correct, and that the surrender was made according to law and the rules of the patent office.

Coming to the merits of the case, it becomes necessary to ascertain the character of the invention, and the true construction of the patent. Present suit is founded upon the second reissued patent. Claim of the patent is, "The plate of hard rubber or vulcanite, or its equivalent, for holding artificial teeth, or teeth and gums, substantially as described." The invention is designated in the patent as a new and useful improvement in artificial gums and palates; but it is described in the beginning of the specification as a new and useful improvement in plates for artificial teeth, which, perhaps, is the better general description. Adopting the usual order, the inventor, in the first place,

points out the objections to and inconveniences in the old mode of attaching artificial teeth to a metallic plate, and of fitting the same to the roof of the mouth. They are, as stated, that the metal was expensive, and that the plate, being hard and unyielding, was apt to injure the mouth, and that its tendency was to impede mastication and obstruct articulation. He then proceeds to say that his invention consists in forming the plate, to which the teeth or teeth and gums are attached, of hard rubber or vulcanite, so called; and describes the hard rubber or vulcanite as an elastic material, possessing and retaining, when used in that way, sufficient rigidity for the purpose of mastication, and being pliable enough at the same time to yield a little to the motions of the mouth. Description is then given of the manner of making the hard-rubber plates, from which it appears that impressions are taken of the mouth, or that part of it the plate is to fit, of wax or plaster, in the same manner as is usually practised in the construction of gold plates for artificial teeth. Superadded to that is also a description of the means employed in setting and securing the teeth, or also of the kinds of teeth which may be employed. They are set in place and adjusted to the proper distance and fullness in the same manner as practised in setting teeth in gold plates. But they are provided with pins projecting in such a manner that the rubber will close around them and hold them secure in position. When completed, the plaster mould, with the teeth set as described, is carefully filled with soft rubber, and the same is made secure in its position by placing another plaster mould over it, and while in that condition it is heated or baked in an oven or in some other suitable way. The statement of the patentee is, that the soft rubber or gum is to be compounded with sulphur, &c., in the manner prescribed in the hard-rubber patent, and is to be subjected to sufficient heat to vulcanize or harden it, as directed in that patent. Unless the soft rubber is colored when purchased from the owner of the hard-rubber patent, it is also to be colored in imitation of the natural gums by mixing it with vermilion or other suitable coloring matter while in the soft state. After the plate has been heated or baked sufficiently to convert it into hard rubber, the mould is removed and the plate is then polished for use. The claim of the patent conforms to the description of the invention as given in the specification; and it is not perceived that any form of words can render it more definite.

Several defences are set up by the respondent upon the merits; but the one most pressed at the argument was, that the assignor if the complainants is not the original and first inventor of the improvement described in the patent. The assignees hold the patent, and they have introduced it in evidence; and having done so, the presumption on that issue is in favor of the complainants. Letters-patent are granted by public authority, and when issued, and regular in form, the presumption is that the power was rightly exercised; and he who alleges the contrary must prove it. Considering the mass of testimony and documentary proofs upon this issue, it is deemed inexpedient to do much more than to state our conclusions. Neither party would be benefited by an attempt to remark upon all the proofs in the case, and it would necessarily extend the opinion to an unreasonable length. Suffice it to say, we have carefully examined the evidence, and, in view of all the facts and circumstances, are fully satisfied that the original patentee, in the contemplation of the patent law, was the original and first inventor of the improvement described in that patent. The respondent contends that the improvement was made by F. A. Bevin, or that the latter was at least a joint inventor with the original patentee. But it is not possible to sustain the first branch of the proposition, because the evidence introduced for that purpose is not sufficient to change the burden of proof, as it fails to show that the person named ever did anything before he was employed by the original patentee, more than try a single imperfect experiment. On the other hand it clearly appears that the original patentee had filed his caveat in the patent office before he had even made the acquaintance of the person supposed by the respondent to be the inventor of the improvement. Such a theory finds no satisfactory support in the proofs, and it is dismissed without further remark. Undoubtedly Bevin went into the employment of the original patentee in the fall of 1853, or early in 1854; but he went abroad in the spring of 1954, and did not return till the fall of that year. When he returned, he commenced, under the directions of the original patentee, the manufacture of hard-rubber plates. They entered into a written contract on the 2d of April, 1855; and the terms of that instrument show that both parties regarded the invention as belonging to the original patentee. By the terms of the instrument it appears that the original patentee had filed a caveat, preparatory to taking letters-patent, and that the other party had already rendered services in perfecting the invention. Substance of the agreement was, that Cummings should furnish all the pecuniary means, have the results, and that Bevin should make the experiments, and be entitled to one third of the interest. But the whole instrument treats Cummings as the inventor and Bevin as the employee. The same conclusion is drawn from the correspondence in the case, which is quite too voluminous to be reproduced. All the conduct of Bevin speaks the same language, and that remark is especially true of his conduct when Cummings was about to apply for a patent. His certificates given at that time are quite decisive, not only that he

did not regard himself as a prior inventor to the original patentee, but that he did not even claim or pretend to be a joint inventor as is supposed by the respondent. He never made any such claim in his lifetime, and no such claim has been made by his legal representatives since his decease. Our conclusion is that the defence on this point is not made out.

The next objection to be noticed is. that the inventor abandoned his invention because his application for a patent, which was made April 12, 1855, was rejected February 6, 1856, and because he did not appeal at all or make any new application until the 25th of March, 1864. Strong doubts are entertained whether any new application was necessary; but if it was, it is believed to be well settled that the second application must be regarded as having been filed in aid of the first, on which the rejection took place. Godfrey v. Eames, 1 Wall. [68 U. S.] 317.

Actual abandonment is not satisfactorily proved; and it is not possible to hold that any use of the invention without the consent of the inventor, while his application for a patent was pending in the patent office, can defeat the operation of the letters-patent after they are duly granted. Such delays are sufficiently onerous to a meritorious inventor if his patent is allowed to have full operation after it is granted, but it would be very great injustice to hold that any delay which the inventor could not prevent, should under any circumstances affect the validity of his patent.

Another objection is, that the second reissued patent. is not for the same invention as that described in the original specification. Comparing the two instruments, it is not perceived that there is any substantial difference between them in respect to anything embraced in the invention. The directions are more specific in the reissued patent, but there does not appear to be any such change in the description of the invention as will support the objection taken by the respondent.

Passing over certain minor objections, it only remains to ascertain whether the charge of infringement is maintained. Charge of the bill of complaint is, that the respondent has manufactured, used, and sold, and still continues to manufacture, use, and sell, many artificial gums and palates embracing the improvement and invention described in the letters-patent of the complainants. The reference in the supplemental answer is to the original answer, and it is the conclusion of the court that the latter, in legal contemplation, admits the charge of infringement. Complainants are entitled to a decree for an account and for an injunction.

[NOTE. The original patent No. 43,009, granted to J. A. Cummings, June 17, 1864, was involved in the case of Goodyear v. Hills. Case No. 5.571a. The reissue No. 1,904, dated March 21, 1865, was involved in the following cases:

Goodyear Dental Vulcanite Co. v. Smith, Case No. 5,598, 93 U. S. 486; Same v. Davis. Case No. 5,589. 102 U. S. 222; Same v. Preterre, Case No. 5,596; Same v. Root, Id. 5,597; Same v. Willis, Id. 5,603; Same v. Flagg, Id. 5,590; Same v. Gardiner, Id. 5,591; Same v. Brightwell, McArthur & M. 74: Same v. Van Antwerp. Case No. 5,600; Same v Osgood, Id. 5,594.]