# FIELD v. COLMAN.

---

PATENTS; INTERFERENCE; REDUCTION TO PRACTICE; SUCCESSIVE APPLICATIONS; CONTINUITY; ABANDONMENT; REVIVAL; APPEAL AND ERROR.

1. The principle of continuity may be applied to successive applications for letters patent on the same generic invention, although the specific disclosures of each may be patentably different, so as to permit the applicant to claim the date of the first application as his date of constructive reduction to practice, where each new application was filed before the preceding one was abandoned, and alleged that it embodied the same subject-matter as the one for which it was substituted. (Following *Lotterhand* v. *Hanson,* 23 App. D. C. 372.)

2. Lack of operativeness in a device as disclosed in an application for a patent will not be found on appeal in an interference case, where no evidence was taken upon the point, and there is nothing in the record to justify overruling the contrary holding of the experts of the Patent Office.

3. An order of the Commissioner of Patents reviving, upon a showing
   of unavoidable delay, an application for a patent and allowing an
   amendment thereto, under Revised Statutes, sec. 4894, U. S. Comp.
   Stat. 1901, p. 3384, which, as amended, provides that, upon failure
   of an applicant to take action on a pending application for a period
   of more than one year, it "shall be regarded as abandoned by the
   parties thereto, unless it be shown to the satisfaction of the Commis-
   sioner of Patents that such delay was unavoidable,—cannot be col-
   laterally attacked on appeal in an interference proceeding.  (Dis-
   tinguishing *Re Selden*, 36 App. D. C. 428, and *Re Mattullath*, 38
   App. D. C. 497.)

4 The question whether an interference should be dissolved will not be
   considered, where it is raised for the first time on appeal.  (Follow-
   ing *Hendley* v. *Clark*, 8 App. D. C. 165, and *Knight* v. *Herriman*,
   37 App. D. C. 236.)

No. 818.  Patent Appeal.  Submitted May 12, 1913.  Decided June 3, 1913.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.                          *Affirmed.*

The COURT in the opinion stated the facts as follows:

Appellant, Millard F. Field, appeals from the decision of the Commissioner of Patents awarding priority of invention to appellee, Howard D. Colman, for a warp-drawing machine.  The counts of the interference are as follows:

"1. In a warp-drawing machine, a reciprocating drawing-in needle, independently supported warp-thread clamps and mechanism to automatically give a differential feed to said clamps at right angles to the line of reciprocation of the needle, to compensate for the difference between the width of the harnesses therein and that of the series of warps.

"2. In mechanism for feeding and operating upon warp threads, means for holding distended in parallel sequence a

series of warp threads; mechanism for separating the threads singly and successively from the series; means for feeding the warp-holding means across the path of movement of the separating means; and means bearing against the contained threads for positioning the warp-holding means and contained threads in relation to the action of the separating means.

"3. In a machine for drawing in warp threads, in combination, a supporting frame; a drawing-in mechanism thereon; means for supporting the harness and the reed; means for supporting the warp threads; means for moving the warp threads with relation to the drawing-in mechanism; and means adapted to be engaged by a warp thread for controlling the moving means for the warp threads.

"4. A machine for drawing warp threads having a warp support, drawing means, means for causing relative traverse between the warp and the drawing means, and feeling means engaging the foremost threads of the warp.

"5. In a machine for operating upon warp threads, the combination with operating means, thread-separating means, means for causing relative progressive movement between the operating means and the separating means on the one hand and the threads of the warp on the other hand, and feeling means for aligning the warp relatively to the separating and operating means.

"6. In a machine for acting upon warp threads, the combination with a movable warp support, of a feeler finger for positioning the warp.

"7. A machine for drawing warp threads having drawing mechanism and means for causing relative transversing movement between the same and the warp threads, a movable warp support and means automatically to adjust said support.

"8. A machine for acting upon warp threads having means for intermittently acting upon the successive threads of the warp, means for causing relative transverse movement between the said means and the warp, and means causing further rela-

tive adjusting movement between successive actions of said. thread-acting means.

"9. In a textile machine, in combination, means for supporting a warp; means for feeding said warp; and means adapted to be acted upon by a warp thread for suspending the feeding action of said feeding means.

"10. In a textile machine, in combination, means for supporting a warp; means for taking a thread from said warp; means for producing a relative feed movement between said warp and the thread-taking means; and· means adapted to be acted upon by a warp thread for suspending the feeding action of said· feeding means.

"11. In a textile machine, in combination, means for supporting a warp; and means for moving said warp-supporting means, adapted to be held from action by· the presence of a warp thread at a point certain within relation to said moving means.

"12. In a warp drawing machine, a carriage, a reciprocating· drawing-in needle thereon, independently supported warpthread-holding devices and mechanism to automatically feed said devices differentially across the line of reciprocation of the· needle.

"13. In mechanism for feeding ˙and operating upon warp· threads, means for holding distended in parallel sequence a. series of warp threads, devices for separating the threads single and successively from the series, together with a carriage for· said separating devices, and mechanism for feeding the warp holding means and contained threads independently and dif-ferentially with relation to said carriage.

"14. In mechanism for feeding and operating upon warp threads, means for holding distended in parallel sequence a se-ries of warp threads, a device for separating the threads single and successively from the series together with a carriage for· said separating device, means for feeding the warp-holding· means and contained threads independently and differentially with relation to the carriage, and positioning means bearing· against the contained threads in said warp-holding means and.

adapted to position the warp-holding means and contained
threads in relation to the action of the separating means.

"15. In a machine for feeding and operating upon warp
threads, means for holding distended in parallel sequence a se-
ries of warp threads, a separating device adapted to single and
successively separate threads from the series, means for feeding
the warp-holding devices and contained threads across the op-
erative path or movement of the separating device, means bear-
ing against the contained warp threads and adapted to govern
the position of the warp-holding frame, a second frame with con-
tained members, said second frame being parallel to the warp-
holding frame, devices for operating successively upon the con-
tained members of said second frame and for giving said second
frame an independent longitudinal feed and compensating ad-
justment parallel with the feeding movement of the warp-hold-
ing means and adapted to maintain said warp-holding means
and said second frame in co-operative alignment and relation,
and auxiliary mechanism associated with said separating device
and said operating devices, said auxiliary mechanism being
adapted to operate successively upon the disengaged threads.

"16. In a machine for operating upon warp threads, a frame
which holds one series of parallel elements to be acted upon
therein, a second frame which holds another series of elements
in substantially parallel sequence, mechanism to separate single
and successively the elements of each series independently, a
carriage to support such mechanism, means to cause a traverse
of the carriage longitudinally of and relatively to the frames,
and means to independently and automatically adjust one of
said frames differentially in a direction parallel with the trav-
ersing movement of said traversing member.

"17. A machine for operating upon a series of warp threads
or the like having warp-supporting means, operating means,
means for causing relative transverse movement between the
same and the warp threads, thread separating means, and means
for automatically aligning the warp with reference to the sep-
arating means.

"18. In a machine for operating upon warp threads, in com-

bination, mechanism for progressively acting upon the individual threads of the warp taken in consecutive order from one side thereof to the other, and means for intermittently shifting or justifying the warp by continued slight movements to correct the deviation of the foremost warp thread from the line of action upon the threads.

"19. In a machine for operating upon warp threads, in combination, mechanism for progressively acting upon the individual threads of the warp taken in consecutive order from one side thereof to the other, and means, actuated during the intervals between successive actions upon the individual threads, for intermittently shifting or justifying the warp by continued slight movements to correct the deviation of the foremost warp thread from the line of action upon the threads.

"20. In a machine for drawing in warp threads, in combination, a picker-up; a vibratory needle for putting a warp thread through an eye of the harness; a warp carriage; means for feeding said warp carriage; and means adapted to be engaged by a warp thread for holding said feeding means from action.

"21. In a feeding mechanism for a warp carriage, in combination, a carriage for the warp; a feeding mechanism for the carriage imparting a step-by-step movement thereto; and a finger adapted to be acted upon by a warp thread for temporarily suspending the movement of the warp carriage."

It appears that appellee filed an application for a patent on October 24, 1894. This application was amended five successive times up to August 11, 1897, the date of the sixth rejection. While pending in this condition, appellant filed his application on June 23, 1898. Both parties continued in the prosecution of their respective applications until September 6, 1902, when appellee filed his second application. On October 6, 1902, appellee abandoned his first application in the following communication to the Commissioner of Patents: "I hereby abandon the above application (filed October 24, 1894), the subject-matter thereof being embodied in application No. 122,381, filed September 6, 1902."

On December 6, 1902, appellee's second application was re-
jected. Appellant's application had been rejected on July 21,
1902. Appellant filed an amendment July 17, 1903, and on
January 11, 1904, appellee filed a petition to revive his appli-
cation, together with certain amendments. The petition was
granted, and, on May 18, 1906, appellee filed a third appli-
cation, which, with the exception of a single amendment, was
an exact duplicate of his second application. Three days later,
appellee sent to the Commissioner of Patents the following
communication: "I hereby abandon the above entitled appli-
cation (filed September 6, 1902), an application upon the same
subject-matter having been filed by me May 18, 1906, and
given Serial No. 317,547 in the Patent Office, this latter appli-
cation being a continuation of the application hereby aban-
doned." On July 21 and September 13, 1906, appellant filed
additional amendments, and on September 26th, appellee filed
an amendment to his third application. October 9, 1906, this
interference was declared. Up to this time neither party had
any knowledge of the action of the other. The decisions of the
various tribunals of the Patent Office have each awarded
priority to appellee.

*Messrs. Emery & Booth, Mr. Frederick P. Fish, Mr. William
G. Johnson,* and *Mr. Melville Church* for the appellant.

*Mr. Luther L. Miller, Mr. L. S. Bacon, Mr. C. C. Linthicum,
Mr. A. S. Worthington,* and *Mr. Lincoln B. Smith* for the ap-
pellee.

Mr. Justice VAN ORSDEL delivered the opinion of the
Court:

This appeal turns upon two questions: Can the principle
of continuity among successive applications be applied to the
three separate applications filed by appellee, so as to permit him
to claim the date of filing the first application as his date of
constructive reduction to practice? Did the Commissioner

have legal authority, under sec. 4894 of the Revised ·Statutes,
U. S. Comp. Stat. 1901, p. 3384, to make the order reviving
appellee's second application?

It should be remembered that at all times between the date
of filing the first application, in 1894, and the declaration of
the interference, appellee had an application for this invention
pending in the Patent Office. The second application, of 1902,
was filed before the first one was abandoned, and the third
application, of 1906, was filed before the second was abandoned.
In each instance it was alleged that the new application em-
bodied the same subject-matter as the one for which it was
·substituted. This we deem of some importance as indicating
the intention on the part of appellee to abandon nothing, but
to make every step taken by him relate back to the original
date of filing the 1894 application. The whole question of
continuity is involved in appellee's 1894 and 1902 applica-
tions, since the 1902 and 1906 applications and drawings are
exact duplicates, excepting that the 1906 application contained
one amendment to the second application which had not been
acted on by the Patent Office.

No new or difficult question of law is here presented. The
·doctrine of continuity in successive applications for the same
invention is well settled. Counsel for appellant, in applying
· the rule of law as to continuity of applications, seem to con-
fuse "specific disclosure" with "invention." The right of an
applicant, by substituted application, to relate back to the date
of filing the first application for reduction to practice, broadly
depends upon whether the substituted application is for the
same invention as that disclosed in the original application; not
that the specific disclosure of the first and second applications
·may be different, or even patentably different, if generically
they relate to the same invention. This interference is to
determine who is the prior inventor of the invention in issue.
The difference between the specifications and drawings of ap-
pellant and appellee is much greater than between the specifi-
·cations and drawings of appellee's 1894 and 1902 applications.

The invention in interference is defined by the counts of

the issue.    These counts were formulated by the Examiner
for the purpose of describing and limiting the invention
claimed by the parties to the interference.    They relate to the
respective embodiments as they existed at the date of the dec-
laration of the interference.    It is not material then, as affect-
ing the rule of continuity, if appellee's device in interference
is not the specific embodiment of the device of the 1894 appli-
cation, or that there may be changes in mechanism, or even
patentable improvements in the later device, if it relates to
the same invention, and the counts of the issue can be read
into the original invention as disclosed by the 1894 drawings.

    That unity of invention lies at the foundation of the doctrine
of continuity as applied to a series of applications is well set-
tled in the early case of *Godfrey* v. *Eames*, 1 Wall. 317, 17
L. ed. 684, where the court said: "A change in the specifi-
cation as filed in the first instance, or the subsequent filing of
a new one, whereby a patent is still sought for the substance
of the invention as originally claimed, or a part of it, cannot
in any wise affect the sufficiency of the original application
or the legal consequences flowing from it. To produce that
result, the new or amended specification must be intended to
serve as the basis of a patent for a distinct and different in-
vention, and one not contemplated by the specification as sub-
mitted at the outset.    *    *    *    In our judgment, if a party
choose to withdraw his application for a patent, and pay the
forfeit, intending at the time of such withdrawal to file a new
petition, and he accordingly do so, the two petitions are to be
considered as parts of the same transaction, and both as con-
stituting one continuous application, within the meaning of the
law."

    The issue here in applying the rule of continuity is one of
invention, and not one of specific embodiment.    Reissue de-
cisions cited by counsel for appellant have little application,
since an application for reissue must not only be for the same
invention as in the original patent, but for the same embodi-
ment of the invention.    That the rule of continuity rests broad-
ly upon the subject-matter of the invention, and not specific

embodiment, is sustained by this court in the interference case of *Lotterhand* v. *Hanson,* 23 App. D. C. 372, where it appears. from an inspection of the record that Hanson, after his first application for a patent on an adding mechanism embodied in the Remington typewriter had become forfeited, filed a new application for a specifically different mechanism embodied in the Blickensderfer typewriter, which was the invention in interference. The court, holding that the second application was a continuation of the first, entitling Hanson to go back to the disclosure in the first application for constructive reduction to practice, said: "When an application for a patent has been allowed, and then abandoned, and subsequently, before the forfeiture has become complete, another application is filed in which substantially the same invention is described and claimed, we cannot, since the decision in the case of *Cain* v. *Park,* 14 App. D. C. 42, regard it as an open question in this court that the applicant is entitled to the filing date of his first application as that of his constructive reduction to practice."

Counsel for appellant challenge the operativeness of the device disclosed in appellee's 1894 application. This contention exists more vividly in the mind of counsel than in the record. No evidence was taken by appellant upon this point, or, in fact, upon any other, and we are unable to find anything in the record which would justify us in overruling the contrary holding of the experts of the Patent Office. Nowhere has it been found, or even intimated, that appellee's earlier mechanism was inoperative.

It is also urged by counsel for appellant that certain of the claims of appellee's second application, of September 6, 1902, cannot be read upon the construction disclosed in his 1894 application. Matters not involved in this interference, or variations in the specific embodiment of the invention, are not material, if the counts of the interference can be read into the 1894 invention. The machine in issue is a most complicated piece of mechanism, one difficult for the average judicial mind to grasp from mere drawings and specifications, illuminated

by the conflicting statements of counsel. In the absence of
testimony to guide our investigations, we must depend largely
upon the conclusions reached by the experts of the Patent
Office. On this point the Commissioner of Patents said:
"Colman's 1894 application is for a machine specifically and
structurally different from the machine of the 1902–1906
applications. The operative principle, the thirteen combined
elements which together make up the invention of the issue,
as it was and as it may be amended, the definite idea of means
claimed to reach the new and useful result sought, both in
general and in particular, are common to those machines and
the applications representing them."

Applying the counts of the issue to the structure disclosed,
as best we can in the light of the record, we agree with the
tribunals of the Patent Office that the invention of the issue
was disclosed in both the 1894 and 1902 applications of ap-
pellee. Appellee's 1902 application, being a continuation of
the 1894 application, entitles him to relate back to the earlier
date for his constructive reduction to practice. *Weston* v.
*White,* 18 Blatchf. 447, Fed. Cas. No. 17,459; *Howes* v.
*McNeal,* 15 Blatchf. 103, Fed. Cas. No. 6,789; *Dental Vul-
canite Co.* v. *Wetherbee,* 2 Cliff. 555, Fed. Cas. No. 3,810;
*Graham* v. *McCormick,* 10 Biss. 39, 11 Fed. 859; *Badische
Anilin & Soda Fabrik* v. *A..Klipstein & Co.* 125 Fed. 543;
*Ligowski Clay-Pigeon Co.* v. *American Clay-Bird Co.* 34 Fed.
328; *Henry* v. *Francestown Soap-Stone Stove Co.* 2 Bann. &
Ard. 221, Fed. Cas. No. 6,382; *Victor Talking Mach. Co.* v.
*American Graphophone Co.* 76 C. C. A. 180, 145 Fed. 350;
*Union Carbide Co.* v. *American Carbide Co.* 172 Fed. 120;
*Clarke Blade & Razor Co.* v. *Gillette Safety Razor Co.* 114
C. C. A. 383, 194 Fed. 421; *Smith* v. *Goodyear Dental Vul-
canite Co.* 93 U. S. 486, 23 L. ed. 952.

It appears that certain claims in appellee's second appli-
cation were, on December 8, 1902, rejected by the Primary
Examiner. No action was taken by appellee until January 11,
1904, when, in response to the action of the Examiner, he filed
an amendment accompanied by a petition to revive the appli-

·cation, which was supported by the affidavit of his attorney setting forth facts tending to show unavoidable delay. Upon this showing the Commissioner entered an order reviving the application. It is now contended that the Commissioner ·exceeded his authority in reviving the application after the time for amendment had expired. Section 4894, Rev. Stat. U. S. Comp. Stat. 1901, p. 3384, as amended, provides that, ·upon failure of an applicant to take action on a pending appli·cation for a period of more than one year, it "shall be regarded as abandoned by the parties thereto, unless it be shown to the satisfaction of the Commissioner of Patents that such delay' was unavoidable."

The question of abandonment under this statute, where the application has been rejected, is a proper one for review on appeal. *Re Selden,* 36 App. D. C. 428; *Re Mattullath,* 38 App. D. C. 497. Those, however, were cases where the inventor was prosecuting his *ex parte* application, and the adverse ruling of the Commissioner was equivalent to a rejection ·of the application. From such rejection we held that appeal would lie. Here we are confronted with a different situation. At the time the order of revival. was made, appellee was prosc·cuting his *ex parte* application, and we think it is now too late to hold that the ruling can be collaterally attacked, and appellee deprived of the rights conferred by the favorable ruling of the Commissioner upon a question which the law expressly confided to his discretion. Had the showing made by appellee been insufficient in the opinion of the Commissioner to warrant the revival of the application, appellee would have been en·titled to a hearing, with the right to make a further showing and to submit proofs to establish the fact that the delay was unavoidable. The favorable ruling of the Commissioner upon the mere affidavit of the attorney necessitated no further action by appellee. To now permit the ruling to be assailed in this proceeding, when the opportunity for defense has passed, would be an unwarranted perversion of justice.

At the time this interference was declared, appellee had an ·allowable application. The examiner presented issues for in-

terference involving only those matters common to the struc-
tures of the conflicting parties. The interference could only
search the record of each party to the extent of determining
the question of priority of invention. The review of the ruling
of the Commissioner on the question of unavoidable delay is
no more competent in an interference proceeding than in a
suit for infringement. In both cases the law considers only
the status of the parties and their respective inventions at the
time the cause of action accrued. In *McDuffee* v. *Heslonville,
M. & F. Pass. R. Co.* 181 Fed. 503, where the Commissioner
held a delay of seven years unavoidable, the court, refusing a
review of the action in an infringement suit involving the
patent issued upon the revived application, said: "This find-
ing is conclusive upon this court, and establishes the fact that
the application for the patent in suit had not been abandoned."

It is finally urged that the interference should be dissolved
as to counts 12, 13, 14, and 16. The contention as to count
12 is raised for the first time in this court, and will not there-
fore, under the rule, be considered. *Hendley* v. *Clark,* 8 App.
D. C. 165; *Knight* v. *Herriman,* 37 App. D. C. 236.

An examination of the drawings, models, and the machine
of appellee, as exhibited in court, discloses that the similarity
of mechanism described in these counts consists broadly in
the function to seize the first thread of the warp and insert
it in the proper place in what is called the harness and reed.
The only difference between the two mechanisms provided to
perform this function is that, in appellant's machine, the har-
ness and reed are stationary, and the operating mechanism
moves; while in appellee's machine, the operating mechanism
is stationary, and the harness and reed move. The essential
function in both means is the relative movement of these parts.
It is immaterial in this case whether the operating mechanism
be held stationary and the harness traversed, or *vice versa.*
On this point the Primary Examiner stated: "Since both
parties have agreed that, for the purposes of this interference
there is no invention in electing to traverse the harness and
hold the operating mechanism stationary, as in the Colman ma-
chine, instead of traversing the operating mechanism past the

rigidly held harness, as in the Field machine, and since generic claims covering this relative movement, together with the compensating movement of the warp frame, have already been included as counts in the interference, it is evident that claims of either party, which differ from these broad counts of the issue merely in specifying the movement of one of the relatively moving elements, are not patentable over the issue. As long as the relative movements of the co-operating elements defining the real invention are clearly set forth in a claim, it matters not whether the carriage is claimed as traversing or stationary. In fact, any definition of this kind can be eliminated, and the claim still define the invention."

A similar question arose in the case of *Reece Button-Hole Mach. Co.* v. *Globe Button-Hole Mach. Co.* 10 C. C. A. 194, 21 U. S. App. 244, 61 Fed. 958, where an automatic relative movement between the stitching mechanism and the plate was disclosed. The court held that claims describing a movement or traveling of the stitching mechanism only applied also to a machine which accomplished the same result by moving the plate while the stitching mechanism remained stationary. On this contention the court said: "Therefore we find nothing in these words which restricts this claim to a machine in which the frame moves. To give such an effect to the word 'carries' as is claimed is more for the pundit than for the courts. It is as commonly used in all kindred matters to mean supporting without movement as supporting with it. We are not required to give it a narrow interpretation for the purpose of depriving the inventor of any part of his invention. Nor are we constrained by any well-settled or just rule of construction to import phraseology from other claims for the same purpose."

The differences in appellee's two machines consist in mere details of mechanism which do not affect the substance of the invention. The case has been considered with ability by each tribunal of the Patent Office. The ruling in each instance has been in favor of appellee, a conclusion justified by the record.

The decision of the Commissioner of Patents is affirmed, and the clerk is directed to certify these proceedings as by law required.                              *Affirmed.*